UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TASHIMIA C. TEAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-04097-SLD-JEH |
| | ) | |
| 7-ELEVEN, INC.,[1] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Defendant 7-Eleven, Inc.'s ("7-Eleven") Motion for Summary

Judgment, ECF No. 24.  For the following reasons, the motion is GRANTED.

BACKGROUND

Plaintiff Tashimia C. Teague, proceeding *pro se*, filed a complaint against 7-Eleven on

June 2, 2021.  *See* Compl., ECF No. 1.  She brings a claim for employment discrimination

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17, due to actions

allegedly taken by the "owner" of the 7-Eleven stores at which she worked, "Greg," and two

district managers.  *Id*. at 2, 4–5.[2]  She listed 7-Eleven's address as 2702 Avenue of the Cities,

Moline, IL 61265, *id*. at 1, and because she was proceeding *in forma pauperis*, the Court first

directed the Clerk to send requests to waive service of summons and then ordered service by the

U.S. Marshal at that address, *see* Nov. 9, 2021 Order 1, 4, ECF No. 6; Apr. 19, 2022 Text Order.

In response, the Court received two letters from Timothy Feeney, an "attorney that represents a

party that operates a business at 2702 Avenue of the Cities, Moline, IL 61265," specifying that

---

[1] Plaintiff Tashimia C. Teague spells Defendant's name as "7 Eleven," Compl. 1, ECF No. 1, but Defendant
indicates that its name is actually "7-Eleven, Inc.," *see* Mot. Summ. J. 1, ECF No. 24.
[2] Because the complaint is not consistently paginated, the Court uses the page numbers generated by CM/ECF.

1

his client was not 7-Eleven and, as such, could not accept service on its behalf. First Feeney

Letter, ECF No. 8; Second Feeney Letter, ECF No. 12. Feeney provided the address of 7-

Eleven's registered agent, Second Feeney Letter, and the Court directed service of 7-Eleven at

that address, May 18, 2022 Text Order. 7-Eleven was served on June 6, 2022. Summons

Returned Executed, ECF No. 15.

On June 27, 2022, 7-Eleven filed a motion to dismiss the complaint, asserting that it was

merely the franchisor of Plaintiff's actual employer, Quad Cities Retail Group LLC ("Quad

Cities"), a 7-Eleven franchise owned by a Gregory Evans, and therefore it was not Plaintiff's

employer for purposes of Title VII. Mem. Supp. Mot. Dismiss 1, 5, ECF No. 18. The Court

determined that it could not come to that conclusion at the motion to dismiss stage and

accordingly denied the motion but, pursuant to Federal Rule of Civil Procedure 56(f)(3),

identified the issue as one that could be resolved by summary judgment. Feb. 16, 2023 Order 7,

ECF No. 21. Accordingly, it granted 7-Eleven 21 days to submit a brief on whether the Court

should enter summary judgment in its favor on the employer issue. *Id*. at 7–8. On March 9,

2023, 7-Eleven filed the instant motion for summary judgment, again arguing that it cannot be

held liable as Plaintiff's employer under Title VII. Mem. Supp. Mot. Summ. J. 1, ECF No. 25.

Plaintiff disagrees and insists that she was employed by 7-Eleven. *See* Aff. 1–2, ECF No. 27.

## DISCUSSION

I.      **Legal Standard**

Summary judgment is warranted when there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where one

party has properly moved for summary judgment, the nonmoving party must respond "by

identifying specific, admissible evidence showing that there is a genuine dispute of material fact

for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  "The mere existence of

a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The court must construe the record in the light most

favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all

factual disputes and drawing all reasonable inferences in favor of [that party]," *Grant*, 870 F.3d

at 568.  However, the nonmovant "is not entitled to the benefit of inferences that are supported

by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599

(7th Cir. 2014) (quotation marks omitted).

## II.     Analysis

Title VII forbids an "employer" from "discriminat[ing] against any individual . . .

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).  "The starting point of any Title VII claim is the existence of an employer-employee

relationship," *Budzyn v. KFC Corp.*, Case No. 21 C 4152, 2022 WL 952746, at *2 (N.D. Ill. Mar.

30, 2022); to bring a Title VII claim against an entity, a plaintiff must prove that the entity is

actually her employer, *see Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015)

(quotation marks omitted).  "[A] plaintiff may have multiple employers for the purpose of Title

VII liability." *Id.*  She may bring suit against the entity that directly employs her (a "direct

employer") and may also sue an entity that is not her direct employer but nonetheless fits certain

criteria established by the Seventh Circuit (an "indirect employer").  *See id.* at 701–02.

Whether an entity is an indirect employer for Title VII purposes is a fact-specific inquiry

hinging on the "economic realities of the employment relationship." *See id.* at 702 (quotation

marks omitted).  To evaluate this, courts use a five-factor balancing test, looking to "(1) the

3

extent of the employer's control and supervision over the employee; (2) the kind of occupation

and nature of skill required . . . ; (3) the employer's responsibility for the costs of operation; (4)

the method and form of payment and benefits; and (5) the length of the job commitment." *Id.*

(citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). "A

plaintiff need not establish that every *Knight* factor falls in her favor in order to prevail." *Frey v.*

*Coleman*, 903 F.3d 671, 681 (7th Cir. 2018). "Of these factors, the employer's right to control is

the most important, and a court must give it the most weight." *Id.* at 676. (quotation marks

omitted). A franchisor, then, could be considered an indirect employer of a franchisee's

employee depending on how these factors are weighed. *Cf. Budzyn*, 2022 WL 952746, at *2

(applying the *Knight* test at the motion to dismiss stage to determine whether KFC Corp., a

franchisor, was liable as an employer for the franchisee's employee's Title VII claim).

In its motion for summary judgment, 7-Eleven argues that there is no genuine dispute of

material fact that 7-Eleven was not Plaintiff's employer for purposes of Title VII. *See* Mem.

Supp. Mot. Summ. J. 5–8. In support, it attaches a declaration from Jessica McKay, a former

Market Leader for 7-Eleven, McKay Decl., ECF No. 25-1 at 1–3; a franchise agreement between

7-Eleven and Quad Cities ("Franchise Agreement"), Franchise Agreement, McKay Decl. Ex. A,

ECF No. 25-1 at 4–7; and a declaration from Nakeysha Hayes, 7-Eleven's Human Resources

Service Center Team Lead, Hayes Decl., ECF No. 25-2.

McKay attests that, due to her former role as Market Leader, she is familiar with the

franchise relationship between 7-Eleven and the 7-Eleven franchise at 4720 27th Street, Moline,

IL 61265 (the "Store"), which was owned and operated by Quad Cities and was one of the

locations at which Plaintiff worked. McKay Decl. ¶¶ 3, 4.[3] She states that this relationship was

---

[3] Plaintiff worked at three 7-Eleven locations: 2702 Avenue of the Cities in Moline, 4520 11th Street in Rock Island, and 4720 27th Street in Moline. *See* Aff. 2; *see* Reply 3, ECF No. 28 (appearing to acknowledge that Plaintiff

governed by the Franchise Agreement and that during all relevant times, 7-Eleven "was not

involved in the hiring, disciplining or terminating of the employment of Quad Cities' employees

at the Store, including that of Plaintiff"; "was not involved in exercising any supervision and

control over what work activity was performed by Quad Cities' employees, including by

Plaintiff, at the Store, or when they were scheduled to work there"; "was not involved at all in

exercising supervision and control over work performed by Quad Cities' employees, including

that by Plaintiff, on a day-to-day basis"; "had no responsibility for and did not pay the general

costs and expenses of operating and maintaining the Store, which were paid by Quad Cities in

accordance with the provisions of the [Franchise] Agreement"; "was not involved at all with the

amount of compensation and benefits or how or when such compensation and benefits was paid

to Quad Cities' employees, including to Plaintiff, for work at the Store"; and "had no role in

determining how long Quad Cities' employees, including Plaintiff, were employed at the Store."

*Id.* ¶¶ 4–10.

The Franchise Agreement, appended to the McKay Declaration, pertains to the 4720 27th

Street address and was signed by 7-Eleven representatives and Gregory Evans on behalf of Quad

Cities. *See* Franchise Agreement 33.[4]  It provides that the parties agree that it

> creates an arm's-length business relationship and does not create any fiduciary,
> special or other similar relationship.  [Quad Cities] agree[s]: (a) to conspicuously
> identify [it]self as the owner and operator of the Store and to hold [it]self out to the
> public as an independent contractor; (b) to control the manner and means by which
> [it] operate[s] the Store; and (c) to exercise complete control over and responsibility
> for all labor relations and the conduct of [its] agents and employees.  [Quad Cities]
> and [its] agents and employees: (i) are not and may not be considered or held out
> to be [7-Eleven's] agents or employees; or (ii) may not negotiate or enter any
> agreement or incur any liability in [7-Eleven's] name, on [its] behalf, or purporting
> to bind [7-Eleven] or any of [7-Eleven's] or [Quad Cities'] successors-in-interest.
> Without in any way limiting the preceding statements, [7-Eleven] do[es] not

---

worked in multiple 7-Eleven stores).  McKay's declaration addresses only the 4720 27th Street location.  *See*
McKay Decl. ¶ 3.  Plaintiff was working at this store when she was terminated.  *See* Aff. 2.
[4] Only excerpts of the Franchise Agreement are provided.

exercise any discretion or control over [Quad Cities'] employment policies or employment decisions, and all employees of the Store are solely [its] employees. No actions [it], [its] agents or employees take will be attributable to [7-Eleven] or be considered actions obligating [7-Eleven].

*Id.* at 1.   The Franchise Agreement also emphasizes the importance of "uniform presentation" between 7-Eleven franchises and establishes certain guidelines to maintain the "7-Eleven Image," such as ensuring "excellent customer service" and conforming to "changes in operating standards, products, programs, services, methods, forms, policies and procedures" and changes in the design and appearance of the building, signage and equipment." *Id.*

Finally, Hayes, as Human Resources Service Center Team Lead, attests that she "searched . . . [7-Eleven's] employee personnel records and found no records showing that Plaintiff was ever employed in a 7-Eleven corporate store or was ever a 7-Eleven employee at any time."  Hayes Decl. ¶ 4.

For her response, Plaintiff provides an affidavit asserting that "to the best of [her] knowledge . . . [she has] only worked for 7 Eleven," noting that almost everything "that was presented to [her] was from 7-Eleven."  Aff. 1.  In support, she attaches several employee shift schedules bearing the 7-Eleven logo, Logoed Shift Schedules, ECF No. 27-1 at 4, 5, 7[5]; a reminder to follow identification laws when selling alcohol or tobacco bearing the 7-Eleven logo, ID Reminder, ECF No. 27-1 at 3; a money order and receipt showing the purchase was from 7-Eleven, Money Order, ECF No. 27-1 at 6; a congratulatory card for successfully carding for an age restricted product bearing the 7-Eleven logo, Card, ECF No. 27-1 at 9; a picture of Plaintiff wearing a nametag bearing the 7-Eleven logo, Picture, ECF No. 27-1 at 10; several employee

---

[5] Plaintiff provides two other employee shift schedules, but the images of them do not show a 7-Eleven logo. *See* Non-Logoed Shift Schedules, ECF No. 27-1 at 1, 8.

performance notice forms bearing the 7-Eleven logo, Performance Notice Forms, ECF No. 27-1

at 14–16; and a copy of 7-Eleven's Cash Accountability Policy and Procedures, Cash

Accountability Policy, ECF No. 27-1 at 17.[6]  Plaintiff does admit that she "notice[d] [her] check

stubs [were] from Quad Cities," Aff. 1, and indeed, the pay stub she provides along with her

affidavit lists Quad Cities as the company making the payment, *see* Pay Stub, ECF No. 27-1 at

12.  But Plaintiff maintains that she worked for 7-Eleven.  *See* Aff. 1–2.

　　　The Court finds that there is no genuine dispute of material fact that 7-Eleven was not

Plaintiff's employer for purposes of Title VII.  Through the Hayes Declaration, Defendant has

set forth evidence showing that Plaintiff was never directly employed by 7-Eleven, *see* Hayes

Decl. ¶ 4, and Plaintiff has not provided anything sufficient to contradict it.[7]  And, examining

each of the *Knight* factors individually and looking to the economic realities of Plaintiff's

relationship with 7-Eleven as a whole, the Court does not find that a reasonable jury could

conclude that 7-Eleven was Plaintiff's indirect employer.  First, there is minimal evidence to

support that 7-Eleven exercised control and supervision over Plaintiff's work at any of the stores.

*See Love*, 779 F.3d at 702.  According to the Franchise Agreement, Quad Cities, not 7-Eleven,

exercised "complete control" over the conduct of the employees working at the 4720 27th Street

store and took no part in Quad Cities' employment policies and decisions.  Franchise Agreement

1.  McKay attests that 7-Eleven was not involved in hiring, supervising, disciplining, or firing

employees at that location, McKay Decl. ¶¶ 5–7, and Plaintiff admits that she was working at

that location when she was fired, *see* Aff. 2.  While the Franchise Agreement and the McKay

---

[6] Plaintiff also provides two doctor's notes, Doctor's Notes, ECF No. 27-1 at 2, 11, and the cover of a sales associate skill evaluation form, Evaluation Cover Page, ECF No. 27-1 at 13, which make no reference to the identity of her employer.

[7] Plaintiff's subjective belief that, "to the best of [her] knowledge," she worked for 7-Eleven, Aff. 1, is not relevant to this analysis.  *See Blood*, 2002 WL 31949885, at *1 (disregarding the plaintiff's argument that she "considered [herself]" to be employed by the franchisor (quotation marks omitted)).

Declaration pertain only to the 4720 27th Street store, Plaintiff has not cited to any evidence

showing that 7-Eleven, rather than managers working for Quad Cities, set her hours or directly

supervised her at the other locations, as 7-Eleven points out.  *See* Reply 3, ECF No. 28; *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (noting that at summary judgment, "the

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case").

      The evidence provided by Plaintiff demonstrating that the 7-Eleven name and logo

appeared on her uniform and on various company papers does not show that 7-Eleven exercised

control over her but rather suggests that Plaintiff worked at a 7-Eleven franchise conforming to

the requisite 7-Eleven franchise image, *see, e.g.*, Franchise Agreement 1 (emphasizing the

importance of a "uniform presentation of a high quality 7-Eleven Image" and noting that the "7-

Eleven System" includes conformity in "the design and appearance of the building, signage, and

equipment").  These signs of belonging to a franchise are not, by themselves, sufficient to

establish the requisite level of control to be considered an individual's employer under Title VII.

*See, e.g.*, *Blood v. MTP, Inc.*, No. 02 C 50029, 2002 WL 31949885, at *1 (N.D. Ill. Jan. 14,

2002) (concluding that a franchisor was not the plaintiff's employer under Title VII despite

providing her with a team member handbook expressing hopes that she "enjoy[ed] working for

[the franchisor]" where it was undisputed the franchisor was not involved in hiring, disciplining,

or terminating her or paying her wages or other benefits); *cf., e.g.*, *Brunner v. Liautaud*, 14-c-

5509, 2015 WL 1598106, at *4 (N.D. Ill. Apr. 8, 2015) (finding, in the context of a suit under the

Fair Labor Standards Act ("FLSA"),[8] that "actions done in the context of quality control and

---

[8] Courts determining whether a party can be considered an employer under Title VII have on occasion looked to
cases brought under federal labor law with respect to factors of control and supervision.  *See, e.g.*, *Gross v. Peoples
Gas Light & Coke Co.*, No. 17-CV-3214, 2018 WL 558515, at *2, *4 (N.D. Ill. Jan. 24, 2018) (citing to an FLSA
case when determining whether a defendant employed the plaintiff for Title VII purposes); *Nardi v. ALG Worldwide*

brand uniformity" do not equate to the exercise of control over employees); *In re: Jimmy John's Overtime Litig.*, 14 C 5509, 15 C 1681, 15 C 6010, 2018 WL 3231273, at *19 (N.D. Ill. June 14, 2018) (finding, in an FLSA suit, that the franchisor defendant's rules regarding the dress and appearance of franchise employees and provision of training materials to ensure employees performed tasks the "Jimmy John's way" did not show meaningful control over the employees but rather were intended to maintain brand standards).

Perhaps 7-Eleven's provision of general cash accountability policy and procedures could constitute a level of control over Plaintiff.  *See* Cash Accountability Policy (providing instructions to cashiers regarding the handling of cash transactions).  Even if the Court were to consider the Cash Accountability Policy a direct instruction to Plaintiff as opposed to an articulation of franchise standards, *cf.* Franchise Agreement 1 (noting that uniform operating standards and policies and procedures were part of 7-Eleven's franchise system), the existence of the policy shows, at most, a minimal level of control over Plaintiff's daily tasks.  *Cf. Brunner*, 2015 WL 1598106, at *4 (noting that a franchisor may impose "comprehensive and meticulous standards to protect its brand and operate the franchises in a uniform way in order to maintain a consistent customer experience" without being considered an employer under the FLSA).

Because of the lack of meaningful evidence showing that 7-Eleven exercised control over Plaintiff's schedule, tasks, discipline, or termination, the first—and most important—*Knight* factor weighs against a conclusion in Plaintiff's favor.  *See Love*, 779 F.3d at 703 (finding no

---

*Logistics*, 130 F. Supp. 3d 1238, 1247 (N.D. Ill. 2015) (noting that, for purposes of determining whether a party is an employer under Title VII, there was "no significant difference between the test articulated in labor law cases and the test that appears in employment discrimination cases: both focus on the extent of control and supervision an entity exerts over the plaintiff, though the [Title VII] economic realities test also examines the financial underpinnings of the relationship").

employment relationship where the defendant "did not directly hire [the plaintiff], did not set his hours, and did not directly supervise his work").

Regarding the kind of occupation Plaintiff held and whether she acquired skills on the job, *see id.* at 702, Plaintiff provides little. She refers vaguely to "training" in her affidavit but does not specify who trained her or how she was trained. *See* Aff. 2. And it is difficult to discern from the exhibits to the affidavit what skills she developed and from whom. She attaches notes with 7-Eleven's logo related to testing customers' IDs before selling age restricted products, *see* ID Reminder; Card, but provides no explanation for how the Court should interpret the notes. The employee performance notice forms appear to have been filled out by Plaintiff's first-level manager, but it is unclear whether this manager worked for 7-Eleven or Quad Cities. *See* Performance Notice Forms. While the forms do bear 7-Eleven logos, uniform forms are part of the 7-Eleven franchise system to maintain conformity between stores. *See* Franchise Agreement 1. Without necessary context for these photos, the second factor does not provide much to support Plaintiff's argument that 7-Eleven was her employer.

Plaintiff has provided no information regarding 7-Eleven's responsibility for the costs of operation at the stores at which she worked. *See Love*, 799 F.3d at 702. On the other hand, McKay states that 7-Eleven bore no responsibility for the general costs and expenses of operating and maintaining the store at 4720 27th Street. McKay Decl. ¶ 8. The third factor thus cuts against Plaintiff's position.

As for the method and form of Plaintiff's payment and benefits, *see Love*, 779 F.3d at 702, Plaintiff herself provided a pay stub showing that it was Quad Cities, not 7-Eleven, who paid her. *See* Pay Stub. There is no evidence to support that 7-Eleven provided Plaintiff with either payment or benefits; indeed, McKay attests that, for the store at 4720 27th Street, 7-Eleven

was not involved with the compensation paid and benefits given to those working there, including Plaintiff, McKay Decl. ¶ 9; *see Love*, 779 F.3d at 704–05 (finding no employment relationship where "[t]here [wa]s no indication that [the putative employer] ever paid [the plaintiff] for his work, or that [it] provided [the plaintiff] any other benefits of employment, such as insurance or vacation time"). As such, the fourth factor weighs heavily against the existence of an employer-employee relationship between Plaintiff and 7-Eleven.

Finally, looking to the length of Plaintiff's job commitment, *see Love*, 779 F.3d at 702, there is no information before the Court suggesting that Plaintiff had worked or ever planned to work directly for 7-Eleven or that her employment with Quad Cities was intended to be a short-term stint between jobs for 7-Eleven. *See* Hayes Decl. ¶ 4; *see Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) (finding that a defendant was not the plaintiff's employer where there was "no expectation that [the plaintiff] would leave and work for [the defendant] once" her current contract with another party terminated). The fifth factor therefore does not support Plaintiff's argument.

The Court concludes that "a reasonable jury could not find that [7-Eleven] exercised sufficient control over [Plaintiff] to be considered [her] . . . employer under Title VII." *See Love*, 779 F.3d at 705. And because 7-Eleven was not Plaintiff's employer, she cannot prevail in a Title VII suit brought against it. As such, 7-Eleven is entitled to summary judgment as to Plaintiff's complaint in its entirety.

This is not to say that Plaintiff cannot bring a Title VII suit against her actual employer for employment discrimination. If she files a complaint making allegations of employment discrimination and names the entity that employed her—not 7-Eleven—as Defendant, she may

be able to proceed with her suit.  As such, the Court will give Plaintiff an opportunity to file an amended complaint against that entity.

## CONCLUSION

For the foregoing reasons, Defendant 7-Eleven, Inc.'s Motion for Summary Judgment, ECF No. 24, is GRANTED.  Plaintiff Tashimia C. Teague may file an amended complaint, naming the correct party as Defendant, within 21 days of service of this Order.  If she fails to do so, this case will be dismissed.

Entered this 10th day of July, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
